**John Brandal GRANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0373–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 6, 1985.

Rehearing Denied Aug. 8, 1985.

Mike J. Stone, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Winston E. Cochran, Jr., Harris County Asst. Dist. Atty., Rusty Hardin, Harris County Asst. Dist. Atty., Houston, for appellee.

Before EVANS, C.J., and DUNN and COHEN, JJ.

## OPINION

DUNN, Justice.

A jury found appellant guilty of the offense of murder and assessed the maximum punishment of lifetime confinement in the Texas Department of Corrections and a $10,000 fine. We affirm.

■ Appellant asserts in his first ground of error that the trial court erroneously excused venire person Smith for cause over appellant's objection, and in effect, gave the state an additional peremptory challenge. He alleges that prejudice was shown because the state had exercised all its peremptory challenges on other members of the venire. *See Payton v. State,* 572 S.W.2d 677 (Tex.Crim.App.1978).

The threshold question is whether the trial court abused its discretion in specifically discharging Smith under the provisions of Tex.Code Crim.P.Ann. art. 35.-16(a)(10) (Vernon Supp.1985), which states, in pertinent part, that a prospective juror may be challenged for cause if it appears that from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. Article 35.-16(a)(10) grants the trial court broad discretion in determining whether a prospective juror is subject to challenge for cause.

During voir dire, Smith stated that he was a personal friend of appellant's mother and sister, and had known the appellant for 13 or 14 years. As appellant correctly argues, "the mere fact that a juror knows, or is a neighbor, or an intimate acquaintance of, and on friendly relations with, one of the parties to a suit, is not sufficient basis for disqualification." *Anderson v. State,* 633 S.W.2d 851, 853 (Tex.Crim.App.1982). However, the facts of *Anderson* are easily distinguished from those in the instant case. The prospective juror in *Anderson* had a "tangential acquaintance" with the victim and several of the state's witnesses;

they were students in the high school in which she taught. In contrast, Smith had known appellant and his family for 13 or 14 years, had visited in their home, and belonged to the same civic club as appellant's mother.

Further, the *Anderson* court found it important to note that the prospective juror in that case had never spoken to the victim or the witnesses about the facts of the case. In the instant case, Smith had been told by appellant's mother that appellant had killed his wife and that the victim had been decapitated. When asked if he could set aside the personal relationship that he had with appellant, Smith replied, "I don't know that I could or not. I have heard about the incident and the particulars about it. Whether or not I could put that out of my mind or not, I don't know." He further admitted that it was hard to separate what one knows about an individual personally from what one hears from the witness stand.

It is apparent from the following testimony that Smith's personal knowledge of appellant and the circumstances of the case prompted an improper, albeit natural, desire to know the motive behind appellant's actions:

PROSECUTOR: I take it his mother has already told you that he did it?

SMITH: Yes, sir.

PROSECUTOR: As you sit there now you are kind of in the posture of having been told by the defendant's mother that he committed the crime that he is charged with?

SMITH: Yes, but I don't know why.

PROSECUTOR: You understand he is not being tried for why?

SMITH: I understand.

PROSECUTOR: If you remember when we talked, really it is murder in Texas if the person knowingly or intentionally causes the death of someone, and I gather you have already been told by the mother that he did, in fact—

SMITH: Yes.

PROSECUTOR: Doesn't that create a problem deciding whether or not he is guilty in this case?

SMITH: Yes, it does.

THE COURT: I'll ask you this. With what you have learned from Johnny's mother, would that influence your verdict?

SMITH: No, because I really don't know the reason.

THE COURT: We are not talking about the reasons.

SMITH: I understand that, but I think there is going to be evidence or whatever is brought, I think that would persuade anybody one way or the other.

THE COURT: We are not talking about any other murder case except this particular one. Are you telling me that you could be totally fair and impartial to both sides in this case and the information that you have about the defendant, the defendant's background and his family, that that wouldn't influence your verdict either at the guilt or the punishment stage?

SMITH: Well, like I told you before, it would be difficult on the punishment stage.

THE COURT: Then the background that you know of Johnny from the information you have, the personal knowledge you have, that would influence your verdict at the punishment stage?

SMITH: Yes, sir.

THE COURT: All right, sir. You can step back outside.

So the record is clear.

PROSECUTOR: The State will move to excuse Mr. Smith.

DEFENSE COUNSEL: We would object.

THE COURT: The Court is going to excuse Mr. Smith.

So that the record is exactly clear, under Code of Criminal Procedure 35.16, section 10.

Article 35.16(a)(10) grants a trial court sufficient discretion to infer that a prospective juror is unable to be impartial, and

Smith's entire voir dire testimony supports such an inference. We therefore hold that the trial court did not abuse its discretion in excusing Smith for cause under article 35.16(a)(10), and overrule appellant's first ground of error.

In five grounds of error, appellant claims that he was denied effective assistance of counsel in violation of his rights guaranteed by the sixth amendment to the United States Constitution. Appellant contends that the lesser-included offenses of involuntary manslaughter and criminally negligent homicide were raised by the evidence, and that trial counsel's failure either to object to their omission from the court's charge or to specifically request appropriate jury instructions constituted ineffective assistance.

■ To sustain a contention of ineffective assistance of counsel mandating reversal, an appellant must meet the two-pronged test set out by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Ingham v. State*, 679 S.W.2d 503, 508–09 (Tex.Crim.App. 1984). Appellant must first show that his counsel's performance was deficient, i.e., counsel's assistance was not "reasonably effective," and, second, that there was a reasonable probability of a different result with effective assistance.

■ Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). Appellant must therefore overcome the strong presumption that an attorney's conduct falls within the wide range of reasonable professional assistance. To accomplish this, appellant must identify specific acts or omissions of counsel that were not the result of reasonable professional judgment and thus fall outside the range of professionally competent assistance. Once these acts are identified, it must be shown that the errors were so serious that the attorney was not functioning as counsel guaranteed by the sixth amendment and that the deficient performance prejudiced the defense to the extent that the appellant was deprived of a fair trial. Showing only that the attorney's performance was deficient, without a showing of resulting prejudice, does not entitle appellant to relief. To show prejudice, appellant must demonstrate a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. These are mixed questions of fact and law which the reviewing court can independently judge, based on the totality of the evidence viewed as of the time of counsel's conduct. *Strickland, supra.*

Appellant did not testify at the guilt/innocence phase of trial, but the state introduced two written statements made by him after his arrest. In appellant's first statement, he asserted that his wife died as a result of falling down a flight of stairs. In a second statement, appellant stated that he had been cleaning the trigger area of one of his guns and that his wife was shot in the head when the gun discharged.

It appears that appellant's second statement could raise both the lesser-included offense of involuntary manslaughter and the lesser-included offense of criminally negligent homicide. *See Moore v. State*, 574 S.W.2d 122 (Tex.Crim.App.1978). The Court of Criminal Appeals has held on many occasions that when evidence from any source raises an issue that a lesser-included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Branham v. State*, 583 S.W.2d 782, 784 (Tex.Crim.App.1979); *Moore*, 574 S.W.2d at 124.

■ Although appellant was entitled to the appropriate jury charge, if properly requested, the failure of counsel to request a charge on the lesser-included offenses did not render that counsel's assistance ineffective.

For the proposition that counsel was under a professional obligation to request such jury charges, appellant cites no cases, but invites comparison with *Boles v. State*, 598 S.W.2d 274 (Tex.Crim.App.1980). The *Boles* court expressed "grave doubt" that

the evidence presented in that case was sufficient to raise the issue of criminally negligent homicide, and held that "[t]he totality of the representation, rather than isolated acts or omissions, is the proper basis for inquiry," in determining whether counsel provided ineffective assistance. 598 S.W.2d at 278–79.

In the instant case, an examination of the record reveals that appellant's trial counsel filed necessary and appropriate motions prior to trial and conducted vigorous cross-examinations of state witnesses. Trial counsel also correctly asserted that the evidence could support a jury finding of "accident," and the trial court so charged the jury. If the jury had returned a verdict of "accident," as was raised by appellant's second written statement, appellant would have been acquitted. There is a strong presumption that a counsel's conduct falls within the wide range of reasonable professional assistance, and the appellant is required to overcome the presumption that the challenged action "might be considered sound trial strategy." *See Martinez v. State*, 675 S.W.2d 573, 575 (Tex.App.—San Antonio 1984, no pet.). When we consider the totality of the representation, we find no showing of ineffective assistance of counsel.

█ In appellant's final ground of error, he claims that trial counsel failed to preserve for review a manifestly improper argument by the prosecutor in which he commented on appellant's failure to testify at trial.

Under the United States and Texas Constitutions, as well as Tex.Code Crim.P.Ann. art. 38.08 (Vernon 1979), it is fundamental and undisputed that the failure of any defendant to testify shall not be alluded to or commented upon by counsel.

Appellant asserts that his trial counsel rendered ineffective assistance by failing to preserve error when the prosecutor made such an improper allusion. The proceedings complained of are set out below, in their proper context:

The first statement the defendant—where she fell down the stairs—realizes that is not going to float. The next day, instead of falling down the stairs, he is cleaning his gun and she is killed. That is the theory of accident they are speaking of. Once somebody claims there is an accident, you get a charge on it, which is why it is in the jury charge. Basically just keep in mind what we know from the evidence and what you can infer, if you choose, from the evidence. We will never know exactly what the sequence was of his shooting her. We will never know. There were only two people there. One, of course, is not with us. What we do know without any question is at some time on Wednesday the 19th, according to his own statement, the second one, and according to the sequence of events that occurred with other people, that Connie was shot. We don't know why. We know what he says. We know he says he has what Mr. Jones chose to call a husband-wife argument. It absolutely blows my mind how a husband-wife or boyfriend or girlfriend or stranger on stranger situation could ever lead to such a ludicrous set of facts as these and really such aberrational human behavior. Regardless, we do know she was shot some time that day. We know Mr. Merrit talked to her on the morning of the 19th. We know from the defendant himself that he does it sometime Wednesday night. We know that Thursday he then takes Timmy up to the Merrit's and then we know that when he gets back Friday is when he starts calling people and leaving messages and phone numbers. We know Barbara Fain gets a call on Friday and Carol Peacock talks to him on Friday. When he talks about the accident, do you realize to this day we don't know the truth of everything that happened? He has never told the truth. There were only two people there. We will never know everything.

What we do know is that he intentionally caused her death but we will never

know the exact facts of what he did and the—sequence.

DEFENSE COUNSEL: Object to that as a comment on the failure of the defendant to testify.

PROSECUTOR: I'm talking about the written statements.

Please do not consider when you go back there anything having to do with the defendant's failure to testify. We went through that on voir dire. Don't let that cross your mind. What I was talking about here is we'll never know because he chooses to give these two statements and they are not the truth. You know they are not.

The general test for determining whether words violate article 38.08 is often expressed as follows:

"The language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. It is not sufficient that language might be construed as an implied or indirect allusion thereto."

*Harris v. State,* 684 S.W.2d 687, 688 (Tex. Crim.App.1984).

In the instant case, there is no necessary implication, within the language used, that the prosecutor was referring to the appellant's failure to testify. The remarks preceding the suspect language concerned only the two written confessions which were admitted into evidence, and the prosecutor reiterated and stressed that fact following objection by appellant's counsel. The most that can be said is that the prosecutor's remarks might have been construed as an indirect allusion to appellant's failure to testify, and that is not sufficient for a finding that art. 38.08 has been violated. *Nickens v. State,* 604 S.W.2d 101, 104 (Tex. Crim.App.1980), (op. on reh'g).

Appellant's final ground of error is overruled, and the judgment of the trial court is affirmed.