**Thomas Charles DANNHAUS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–94–00464–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 25, 1996.

Buddy Stevens, Angleton, Colin B. Amann, Houston, for appellant.

Jim Mapel, Angleton, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Thomas Charles Dannhaus appeals from a murder conviction claiming ineffective assistance of counsel based on failure to (1) conduct an adequate voir dire, (2) request jury instructions regarding self-defense, mistake of fact, and voluntariness, and (3) cross-examine three witnesses. We affirm.

Appellant was charged with murdering his recently divorced wife, Suzanne Dannhaus ("Suzanne"), by shooting her with a shotgun. Appellant claimed that Suzanne approached him with a kitchen knife during an argument and that he shot her after she injured him with the knife and refused to drop it. The jury returned a guilty verdict on the murder charge. Additional facts of the case will be discussed as the various points of error are addressed.

■■■ The test to be applied in determining ineffective assistance of counsel is found in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* two prongs must be met. First, the defendant must show that counsel's performance was deficient. *Id.,* 466 U.S. at 687, 104 S.Ct. at 2064. The proper measure of attorney performance is whether the representation was reasonable considering all of the circumstances. *Id.,* 466 U.S. at 688, 104 S.Ct. at 2064. The test is to be applied at the time of trial, not through hindsight. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex. Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Moreover, when reviewing a claim of ineffective assistance of counsel, judicial scrutiny of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* Stated another way, the defendant must overcome a presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*

If the first prong is met, the defendant must also show that counsel's performance prejudiced the defense. *Id.,* 466 U.S. at 692, 104 S.Ct. at 2066. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Id.,* 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the *Strickland* prejudice prong requires the defendant to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2067. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* When addressing this second

step of *Strickland*, the reviewing court should examine counsel's errors not as isolated incidents, but in the context of the overall record. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986). Additionally, the reviewing court need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

### Voir Dire

In the first eight of his fifteen points of error, appellant claims that Stevens failed to conduct an adequate voir dire for not asking the panel about various matters.[1]

Before voir dire began, the trial judge explained to the panel that the defendant in the case was charged with murder, that a jury must be fair and impartial, that a jury can only consider the evidence and must follow the law, that the defendant is presumed innocent, that the State must prove its case beyond a reasonable doubt, that the defendant has a right to remain silent, and then he explained how these concepts related to the appellant directly. The judge stressed that a grand jury indictment is not evidence, cannot be considered by the jury, and is only a tool that brings the defendant to trial, and cannot be used against the defendant for any purpose whatsoever. The judge then asked whether any member of the jury panel could not or would not follow the law. None of them responded.

The court then asked in detail whether the panel members were statutorily qualified to sit on the jury. These questions included whether anyone had a bias or prejudice against the appellant, whether anyone had read or heard anything about the case, whether anyone had already formed an opinion about the case, and whether anyone knew the victim or the victim's family. The judge then told counsel they would each have one hour and fifteen minutes to conduct voir dire.

After a break, the judge once again reminded the panel that the case should not be tried in the media, but only by the evidence.

Counsel for the State then began his voir dire. He explained: that jurors must not be biased against either side, but must be fair; that the State must prove its case beyond a reasonable doubt on each and every element of the offense; the definition of and examples of intentional acts; and that the appellant and State were probably going to disagree whether appellant had the requisite intent to shoot the gun. The State then told the panel that the fight between appellant and the victim had occurred while discussing their recent divorce. He then asked whether anyone could not sit and judge the guilt or innocence of the defendant. No one answered.

The State next asked whether the panel could judge the credibility of expert and police officer witnesses as they would for any other witness. Each panel member stated he or she could. Then the State explained that their opinion of the police officers' testimony must not be tainted because someone had been a victim of crime. Each panel member said he or she could listen fairly.

The State also instructed the panel, as the judge had earlier, that the indictment is not evidence of guilt, and that if they have feelings about that issue, they should not allow those feelings to influence their decision in a way that they could not be fair jurors. The State explained a jury charge and asked whether anyone would have a difficult time following the charge. No one indicated they would not. The State explained and asked the panel whether they could consider the full range of punishment for both the charged and lesser included offenses, and also whether they could consider the possibil-

1. These matters included: the effects that pretrial publicity may have had on the venirepanel, the presumption of innocence, the beyond-a-reasonable-doubt standard for guilt, the believability of a criminal defendant, the indictment as evidence, whether they or anyone in their family had been a victim of crime, whether anyone worked for law enforcement or would automatically believe the testimony of an officer, whether anyone knew the prosecutor, whether anyone could reject the testimony of an expert, the mo-

rality of having a gun in one's home, whether anyone had served on a criminal jury, whether anyone could consider the minimum range of punishment, whether anyone had been through a difficult divorce, perhaps involving a custody dispute, whether the jurors were statutorily qualified, what the jurors thought about the defenses of self-defense, mistake of fact, and voluntary conduct, and what the jurors thought about the unavailability of the accident defense.

ity of probation in the appropriate circumstances. No one indicated that they could not.

The State then asked whether anyone had been charged with or convicted of a criminal offense, or had a friend or family member who had. While a few stated they did and that it would cause them to be biased, none of those panel members were ultimately selected for the jury.

Defendant's counsel, Stevens, then conducted his voir dire. He explained in some detail that the indictment is not evidence, that the defendant does not have to prove anything and the burden of proof never shifts to the defendant, what the presumption of innocence is, and that it is not lost by what the newspapers print.

Stevens then explained various types of homicide and the concept of lesser offenses, and told the panel he thought the evidence would raise something other than an intentional and knowing shooting. He explained the concept of accident, and specifically that if someone committed a crime by accident, the actor would not be guilty. He explained that the law of accident does not exist by itself, but instead is incorporated into the concept of culpable mental states, and he illustrated that point by giving several examples. He then asked whether anyone would have a problem holding the State to prove beyond a reasonable doubt the elements under the various mental states he had explained. No one indicated they would.

Stevens then asked whether any of the panel members had been or were in the process of getting divorced. He also asked who had weapons in their home and whether anyone would hold it against the defendant for having a weapon in his home. He then warned the jury that rumors and media coverage of the case are not evidence and cannot be considered by the jury. He also asked whether anyone could not consider the full range of punishment or probation. No one indicated they could not.

Stevens asked whether anyone knew any of the various witnesses, any law enforcement officers from the Lake Jackson area, or anyone working in the district attorney's office. Then he asked whether anyone thought there was anything about the case they had discussed or mentioned that would make them an unfair juror or have some sort of bias or prejudice against some part of the law or type of case. Finally, in the last few minutes of his allotted time, he once again discussed whether the panel would have any problems with the defendant having a loaded gun in the house, trying to ensure that no one would hold that against the appellant.

Appellant argues that Stevens made only a general mention of the presumption of innocence, proof of guilt beyond a reasonable doubt, the indictment as evidence of guilt, and whether the venirepanel could consider the minimum range of punishment. However, the record indicates that the court, the State, and Stevens each explained these concepts to the jury.

Appellant also complains that Stevens did not ask, in even a cursory fashion, whether any panel member had been the victim of crime or had a family member murdered. However, the judge, State, and Stevens gave several admonishments to the jury that they must be fair and impartial and not be biased or prejudiced in this case. Furthermore, the State explicitly informed the panel members that they must not allow themselves to be influenced by any experience they had with crime. The court also asked whether anyone could or would not follow the law.

Appellant argues that Stevens completely failed to discuss whether anyone on the panel had worked for law enforcement. Stevens did, however, ask whether anyone they knew, presumably including themselves, worked for the Lake Jackson police department or district attorney's office.

Appellant argues that Stevens completely failed to ask whether anyone of the panel would automatically believe the testimony of a police officer or expert witness. However, the State explicitly asked the panel whether anyone would treat an officer's or expert's testimony any differently than another witness'.

Appellant argues that Stevens completely failed to question the panel about the believability of a defendant. However, the court,

State, and Stevens, did explain the nature of the case to the panel, and asked whether anyone could not be fair and impartial.

Appellant argues that Stevens completely failed to ask whether any panel member had served on a jury in a criminal case. However, that information was on the juror information cards.

Appellant claims that Stevens should have asked why each panel member did or did not keep a weapon at home. However, Stevens asked whether anyone would hold it against the defendant for keeping a loaded gun in his home, and discussed weapons in the home.

Appellant argues that Stevens' questioning regarding marital status was insufficient because he did not ask the panel members the circumstances of the divorce or whether children were involved. Appellant claims this information would have been helpful as the shooting in the case arose during a fight between a recently divorced couple. The State argues the number of children of the panel members was on the jury forms, and that, as a practical matter, many jurors would not reveal whether they had a violent or difficult divorce. Moreover, before Stevens' voir dire, the State had already informed the panel that the fight between appellant and the victim had occurred during an argument about their divorce, and then asked whether anyone could not sit and judge the guilt or innocence of the defendant.

Appellant argues that Stevens' "most glaring" failure was not to ask the panel about pretrial publicity. Specifically, he complains the panel should have been asked what they had heard or read about the case. However, the trial judge had already asked the panel if anyone had read, heard or been told about the case which caused them to form any opinion or conclusion as to the guilt or innocence of the defendant.

Appellant claims that Stevens also failed to conduct an adequate voir dire by discussing the now-repealed defense of accident, saying it is not the law, but indicating that accident would be appellant's defense. A review of the record, however, indicates that Stevens explained how the defense of accident was incorporated into the concepts of culpable mental states in that if someone acted accidentally he would not have intent. Not only did Stevens define each mental state, but he also gave examples further illustrating the concepts. Stevens also stated that while the law of accident does not exist by itself, the concept of certain culpable mental states requires that the act not be an accident. He did not, as appellant contends, tell the jury he was relying on a defense not recognized by the law. Stevens not only spent much of his voir dire on this topic, but also asked whether each panel member understood it.

Finally, appellant contends Stevens failed to determine whether a prospective juror was statutorily prohibited from hearing the case. However, the trial judge had already made that determination.

Although a lawyer's decisions in trial can always be second-guessed by hindsight, having reviewed the voir dire proceeding, we do not believe that Stevens' performance in this case fell below an objective standard of reasonableness, particularly in light of the time constraint imposed by the court. We, thus, overrule appellant's first eight points of error.

## Jury Instructions

In his ninth, tenth, and eleventh points of error, appellant claims Stevens failed to request jury instructions on (1) self-defense, (2) mistake of fact, and (3) voluntary conduct.

A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, weak, feeble, unimpeached, or contradicted. *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex.Crim.App.1978). Appellant claims that because the evidence allowed instructions to be given on self-defense, mistake of fact and voluntary conduct, Stevens' failure to request instructions on those issues amounted to ineffective assistance of counsel.

However, even if the evidence was sufficient to raise these defenses, which we do not decide, merely being entitled to a jury instruction but not requesting it is not the test for ineffective assistance of counsel. Instead, the test is whether it was objectively unreasonable for counsel not to ask for it.

*See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063. We do not accept the broad and unsupported assertion that appellant's counsel was under a professional obligation to request jury instructions on every issue raised by the evidence just for the sake of doing so. Rather, counsel is under no duty to raise every defense available, so long as counsel presents a defense that is objectively reasonable or strategically sound.[2] In some cases, it may be a more effective strategy to focus on a relatively narrow defense, rather than to use a "shotgun" approach by arguing every defense available.

■ As to self-defense,[3] when appellant took the stand, he stated that at the time of the shooting he was not in fear of his life, he was not afraid of the victim when she attempted to cut him with the kitchen knife,

that he could have taken it away from her, and that the shooting was an accident. Thus, by this testimony, appellant considerably weakened an assertion of self-defense.[4]

Appellant also claims that counsel was ineffective for not requesting an instruction on the defense of mistake of fact[5] because the appellant testified that he thought the gun was unloaded. However, there was little, if any, other evidence to support this, and Stevens' theory was instead that appellant lacked the culpable mental state.[6]

Appellant also claims that counsel was ineffective for not requesting an instruction on voluntariness. A person commits a criminal offense only if he voluntarily engages in conduct, including an act, an omission, or possession. TEX.PENAL CODE ANN. § 6.01(a). Vol-

2. *Compare Grant v. State,* 696 S.W.2d 74, 77 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd) (holding that, although appellant may have been entitled to jury charge on lesser included offenses, failure to request it did not render counsel's assistance ineffective) *with Vasquez,* 830 S.W.2d 948 (Tex.Crim.App.1992) (holding that defendant received ineffective representation where counsel failed to research defenses available, argued a defense not raised by the evidence, and neglected the *only* defense available).

3. A person is generally justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX.PENAL CODE ANN. § 9.31(a) (Vernon 1994). A person is justified in using *deadly* force against another:
   (1) if he would be justified in using force against the other under [Penal Code] Section 9.31;
   (2) if a reasonable person in the actor's situation would not have retreated; and
   (3) when and to the degree he reasonably believes the deadly force is immediately necessary:
      (A) to protect himself against the other's use or attempted use of unlawful deadly force; or
      (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.
   *Id.* § 9.32.

4. *See Jackson v. State,* 491 S.W.2d 155, 156 (Tex. Crim.App.1973) (holding that appellant negated theory of self-defense when he stated he stabbed the deceased by accident). Additionally, before deadly force may be used in self-defense, the defendant is required to retreat if a reasonable

person would have retreated, even if the person is in his own home. *Valentine v. State,* 587 S.W.2d 399, 402 (Tex.Crim.App.1979). In this case, there was no evidence to suggest that a reasonable person would not have retreated before using deadly force.

5. With regard to mistake of fact, Section 8.02 of the Texas Penal Code provides:
   (a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required to commission of the offense.
   (b) Although an actor's mistake of fact may constitute a defense to the offense charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as he believed.
   TEX.PENAL CODE ANN. § 8.02 (Vernon 1994).

6. Appellant was charged in this case with murder. A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX.PENAL CODE ANN. § 19.02 (Vernon 1994). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

untariness is defined as "the absence of an accidental act, omission or possession." *Alford v. State,* 866 S.W.2d 619, 624 (Tex.Crim. App.1993). A voluntary act plus a culpable mental state is required for a person's conduct to be criminal. *See* TEX.PENAL CODE ANN. §§ 6.01, 6.02. In this case, the gun did not have a hair trigger and required over 5½ pounds of pressure to fire, and appellant arguably admitted to pulling the trigger deliberately, thus, seriously undermining an involuntary act defense.

In light of these considerations, Stevens' choice to focus on culpable mental state rather than self-defense, mistake of fact, or voluntariness cannot be said to fall below an unreasonable standard, especially where the evidence to support the other theories was not strong, and where he had explained to the jury in voir dire and closing argument that his case was centered on the State's failure to show intent. Moreover, Stevens' strategy, in light of the strong evidence of guilt, was apparently to seek a conviction of a lesser offense requiring a lesser culpable mental state.[7] Given this approach, it could have been more effective to focus the jury's attention on lack of mental state than to risk confusing the jury with instructions on other issues that were not well supported by the evidence. Under the circumstances, a strategy of "damage control" was not objectively unreasonable. *See Hathorn v. State,* 848 S.W.2d 101, 118 (Tex.Crim.App.1992) (trying to get jury to find defendant guilty of lesser offense can be explained as a sound trial tactic), *cert. denied,* 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993). Accordingly, we overrule appellant's ninth, tenth and eleventh points of error.

### Cross–Examination

■ In his twelfth point of error, appellant claims Stevens was ineffective in failing to cross-examine three of the State's 14 witnesses: (1) Emma Guitierrez, (2) Nancy Sabrasula, and (3) the victim's father, Eugene Brannan.

7. The jury charge included not only murder, but also involuntary manslaughter, aggravated as-

Guitierrez testified that it was her job to baby-sit appellant's children in the morning. During this time, she would get them ready and drop them off at school. According to Guitierrez, on the day of the shooting, appellant called her and said that he wanted to take his children to school that day. She also testified that a week or two earlier, she spoke with appellant and he said that his children would never have a stepfather.

Sabrasula testified that on the morning of the shooting, appellant dropped his kids off at school and before leaving he hugged and kissed his children making a special point of telling them that he would always love them. According to Sabrasula, appellant started to cry and looked at his children the same way her husband had looked at her when he left for Vietnam. After the State later recalled her in rebuttal, Stevens cross-examined her as to how many people come through the school door with their children each morning. She responded 50 or so.

Brannan, the victim's father, testified that, after appellant and his daughter were divorced, appellant's demeanor changed to the point where Brannan became very fearful for his daughter's safety. He also stated that less than a week before the shooting, appellant and his daughter had a tremendous argument when they were moving out of the house. Apparently, appellant had found a Christmas card addressed to his ex-wife from another man stating that "next year will be better." According to Brannan, appellant was saving the card to give to his kids to show the poor character of their mother. Appellant then told Brannan that "no son-of-a-bitch was going to raise his kids, he would kill anyone that tried to." Brannan said that was not the first time he had heard appellant threaten his daughter and tell her that no one else would ever live with his kids. Brannan also said that he heard appellant tell one of the children that it would not be long before the child would be living with him forever. Appellant claims that while counsel did cross-examine Brannan, it was inade-

sault and criminally negligent homicide.

quate because the detrimental impact of the testimony was not seriously challenged.

Appellant argues that the record as a whole reflects that Stevens' theory of the case was that the shooting was unintentional. Consequently, it is inconceivable, according to appellant, that Stevens would neglect to cross-examine three witnesses whose testimony can only be interpreted as proving motive and intent on appellant's part. These deficiencies, appellant claims, rise to the level of ineffectiveness. We disagree.

Cross-examination is inherently risky, particularly in criminal cases where pre-trial discovery is more limited than in civil cases. A decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial. *Coble v. State,* 501 S.W.2d 344, 346 (Tex.Crim.App.1973). If ineffective, cross-examination can serve to bolster the credibility of the witness and underscore the very points that are sought to be impeached. Thus, unless there is a good basis on which to cross-examine, which appellant has not shown here, it can be more effective to refrain from cross-examining a damaging witness to minimize the impact of his testimony.[8] In addition, cross-examining a sympathetic witness, such as the father of a deceased victim, can offend jurors. Stevens cross-examined the State's other eight witnesses and presumably made a calculated decision not to more aggressively cross-examine these three. Under the circumstances, we cannot say that his trial strategy was unsound. Appellant's twelfth point of error is overruled.

In his thirteenth and fourteenth points of error, appellant claims that the prejudice prong in *Strickland* does not apply in determining the effective assistance of counsel under Texas law because the "right to be heard" provision in Article I, Section 10 of the Texas Constitution provides greater protection than the "right to assistance of counsel" provision in the Sixth Amendment of the United States Constitution.[9] In his fifteenth point of error, appellant claims that he was harmed even if we apply the second prong of *Strickland.* Because we do not conclude that his trial representation was unreasonably deficient, we need not address these points concerning the second prong. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. Accordingly, the judgment of the trial court is affirmed.

---

8. Appellant argues that, in light of the damaging nature of these witnesses' testimony, appellant's counsel had nothing to lose and could make the situation no worse by cross-examining the witnesses. Obviously, appellant's trial counsel did not have the benefit of such hindsight before the jury reached its verdict. Moreover, without evidence of what the witnesses might have said, we do not believe that such a generalization can be validly assessed, much less serve as a basis for finding ineffective assistance of counsel.

9. Appellant argues that the adoption of the *Strickland* prejudice prong in *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986), was mere dicta. Even if this were true, there have been several cases in which the Court of Criminal Appeals has moved beyond the first prong of *Strickland* to determine the effect of deficient representation, and in doing so, applied the *Strickland* prejudice prong. *See e.g. Banda v. State,* 890 S.W.2d 42, 59 n. 10 (Tex.Crim.App. 1994), cert. denied, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Ex Parte Menchaca,* 854 S.W.2d 128, 132 (Tex.Crim.App.1993); *Vasquez v. State,* 830 S.W.2d 948, 951 (Tex.Crim. App.1992). Accordingly, there is no authority to conclude that the second prong would not also apply in this case.