In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00115-CR
______________________________


GERALD THOMAS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 02-0190X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            A jury found Gerald Thomas guilty of two counts of indecency with a child, four counts of
sexual performance by a child, one count of sexual assault, and three counts of aggravated sexual
assault. Thomas pled guilty to one count of possession of child pornography. The jury assessed
Thomas' punishment at the maximum for each count. The sentences are consecutive under
Section 3.03 of the Texas Penal Code and total 397 years' imprisonment. See Tex. Pen. Code Ann.
§ 3.03 (Vernon 2003). Thomas appeals alleging he received ineffective assistance of counsel as his
sole point of error. We affirm the judgment of the trial court.
Facts
            Thomas was a pastor at the Good Shepard Lutheran Church in Marshall, Texas. While
serving as a pastor, Thomas befriended several neighborhood boys. The charges in this case
involved three boys: T.M., L.W., and J.S. 
            Thomas volunteered to be a mentor at a local school and was assigned to be T.M.'s mentor. 
For the first couple of weeks, they met at the school, but Thomas soon began inviting T.M. over to
his house approximately twice a week. On one such occasion, Thomas performed oral sex on T.M. 
At the time of the abuse, T.M. was over fourteen years old but less than seventeen years old. 
            After T.M. moved to Oklahoma, Thomas befriended L.W. and J.S. Thomas made the
acquaintance of L.W. during a community football game near the Good Shepard church. J.S. met
Thomas through the mentoring program at school. Thomas began taking J.S., L.W., and K.D.,
L.W.'s six- or seven-year-old brother, out to eat, to the mall, and to movies. After a few months,
Thomas started inviting the boys over to his house. During this time, Thomas exposed his privates
in the presence of J.S. and L.W. J.S. and L.W. recorded a compact disk on Thomas' computer on
which they exposed their genitals and committed sexual acts. Thomas made a brief appearance on
the compact disk. The compact disk contained several different sections which had images of the
two young boys. In some of the sections, the boys were just "clowning around" or engaging in
"locker room" activity, but other sections contained sexual activity.
            When J.S. got in trouble and was sentenced to a "boot camp" program in juvenile court, he
started staying overnight at Thomas' house during the week because Thomas had agreed to provide
him transportation to "boot camp." During this time, Thomas began ordering J.S. to masturbate in
front of him and would fondle himself while watching. J.S. testified Thomas threatened to tell his
parents he had stolen money, send him home, or to even kill him if he did not perform the acts on
which Thomas insisted. During this time, J.S. would sleep in the same bed as Thomas. On three
separate nights, Thomas penetrated J.S.'s anus with his penis. J.S. was thirteen years old at the time
he was abused. 
            Thomas met a number of area youths who played basketball and computer games at the
church. Besides the three victims, other youths were invited to Thomas' house. One of these boys,
J.H., found a disk which contained a recording of J.S. and L.W. exposing their genitals and
committing sexual acts. J.H. attempted to use the disk to blackmail Thomas into purchasing a truck
for him. Although J.H. and Thomas test drove some vehicles, Thomas did not buy J.H. a truck. The
Federal Bureau of Investigation (F.B.I.) became aware of the disks existence and seized it during a
search of J.H.'s house. Eventually, several neighborhood boys informed the investigators Thomas
had sexually abused them. Thomas was arrested and interviewed by the F.B.I. In his statement to
the F.B.I., Thomas denied the sexual abuse and denied any possession of child pornography. He
stated he had instructed the two boys who made the recording to stop recording the video and had
erased the recording from his computer. 
            John Wiechman, an expert in computer forensic investigation, recovered thousands of files
containing child pornography and new group messages regarding child pornography on Thomas'
computer. In addition, four video files were found in which J.S. is seen, alone, talking to the camera
and masturbating. 
            A federal grand jury was the first to indict Thomas. Eventually, Thomas pled guilty to the
charge of possession of material involving sexual exploitation of minors. Thomas was sentenced
in the United States District Court for the Eastern District of Texas to sixty months' imprisonment.
            Nine days after the judgment in federal court, Thomas was indicted by a state grand jury in
Harrison County on twelve counts of state offenses committed during his pattern of sexual abuse. 
Before the reading of the indictment, the State dropped one of the counts. 
Ineffective Assistance of Counsel
            Thomas contends he received ineffective assistance of counsel. Thomas alleges his trial
counsel failed to suppress prejudicial evidence, failed to interview and subpoena potential defense
witnesses, failed to use exculpatory polygraph evidence, and failed to effectively cross-examine the
State's witnesses. 
            We note that direct appeal is often a poor vehicle in which to bring an ineffective assistance
of counsel claim. Ineffective assistance of counsel claims "must be firmly founded in the record." 
Thompson v. State, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Thomas filed a motion for new
trial alleging ineffective assistance of counsel as one of its grounds. A verified affidavit was attached
to the motion for new trial. Although Thomas requested a hearing, no hearing was held, and the
motion was overruled by operation of law. On appeal, Thomas does not complain of the failure to
hold a hearing. The only evidence supporting his ineffective assistance of counsel claim is the
supporting affidavit to the motion for new trial. Direct appeals often present a limited record for
review of the typical issues raised in an ineffective assistance point. Id. at 812; Phetvongkham v.
State, 841 S.W.2d 928, 932–33 (Tex. App.—Corpus Christi 1992, pet. ref'd, untimely filed). One
way to get evidence of counsel's trial strategy or other matters in the direct appeal record is through
a motion for new trial. Another way to develop a proper record is through a hearing in a habeas
corpus collateral attack. See generally Tex. Code Crim. Proc. Ann. arts. 11.01–.65 (Vernon 1977
& Supp. 2004). 
            Both the Sixth Amendment and the Texas Constitution confer a right to effective
representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's
performance is ineffective, the conviction cannot stand. The Texas Court of Criminal Appeals has
held that the Texas Constitution does not impose a higher standard than the Sixth Amendment. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53,
56–57 (Tex. Crim. App. 1986). The Sixth Amendment standard, established by Strickland, requires
a defendant alleging ineffective assistance of counsel to show that his or her counsel's performance
at trial was deficient and that counsel's deficient performance prejudiced his or her defense. See
Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). 
            To satisfy the deficiency prong of the test, Thomas must prove by a preponderance of the
evidence that his counsel's representation fell below the objective standard of professional norms. 
Bone, 77 S.W.3d at 833. There is a strong presumption that counsel's performance was adequate. 
Id. The reason for this presumption is that counsel at trial is better positioned to judge matters of
strategy than an appellate court reviewing a cold record. An appellate court should not "conclude
the challenged conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). An ineffective assistance of counsel claim cannot be based on a difference of opinion
concerning strategy. "[T]he defendant must prove, by a preponderance of the evidence, that there
is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. 
            First, Thomas contends his trial counsel failed to suppress prejudical evidence. The State
argued at trial Thomas allowed the boys to smoke cigarettes and consume alcohol at his house. The
State presented a theory Thomas had created a "playhouse" atmosphere. To further this theory, the
State used three bottles of liquor as props to create the impression Thomas made alcohol freely
available to the boys. Thomas claims his counsel's failure to suppress the bottles resulted in
ineffective assistance. Thomas alleges the federal court suppressed the bottles based on its
interpretation of state law. When claiming ineffective assistance of counsel for failure to attempt
the suppression of evidence, an appellant must show that the motion to suppress would have been
granted. Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). A certified copy of the
federal court's ruling was not introduced into evidence. The only evidence of the suppression are
the self-serving statements made by the accused. Other than Thomas' statement that the bottles were
"outside the scope of the search warrant," there is no indication in the record as to why the bottles
were suppressed in the federal court or even if they were suppressed. "If counsel's reasons for his
conduct do not appear in the record and there is at least the possibility that the conduct could have
been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective
assistance claim on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002); see
Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003). Thomas' trial counsel's decision
concerning whether to challenge the admissibility of the evidence may have been a tactical decision. 
The bottles were not an essential element of any of the charges, and thus their effect is entirely
tactical. This Court should not consider the wisdom of such a strategy, since ineffective assistance
of counsel claims cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 835. Thomas
has not met his burden of proving that the failure to suppress the bottles fell below the objective
standards of professional norms.
            Next, Thomas contends his trial counsel was ineffective because he failed to interview,
subpoena, or call witnesses on Thomas' behalf. Thomas alleges he provided his trial counsel with
a list of fourteen witnesses and inquired several times as to the status of his investigation. 
            We note that the failure to call witnesses may be ineffective assistance of counsel. Butler v.
State, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986) (failure to present available alibi witnesses deemed
ineffective assistance of counsel). However, such witnesses must be shown to be available and to
actually benefit the defense. Id.; Bates v. State, 88 S.W.3d 724, 728 (Tex. App.—Tyler 2002, pet.
ref'd); Simms v. State, 848 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). 
            Thomas' argument fails because he failed to show that these potential witnesses were
available and that their testimony would benefit his defense. The record indicates the defense
counsel filed applications for subpoenas for several witnesses. As Thomas concedes in his affidavit,
only one witness of the original four selected appeared to testify. Thomas concedes he chose not to
call that witness. Of the other three witnesses, Thomas' affidavit makes clear that two would not
benefit the defense. Thomas wanted to subpoena one of the witnesses concerning an assault J.S. had
committed. However, evidence of juvenile adjudications and unadjudicated offenses are
inadmissible to impeach a witness. See Tex. R. Evid. 608(b), 609(d). The second witness, a school
counselor, had informed Thomas' lawyer she "wanted to see [Thomas] fry." Certainly, she does not
appear to be a beneficial witness. The third witness, a friend of Thomas' from the seminary, did not
appear for trial. Thomas alleges he "later learned from him that [the friend] never was served a
subpoena, and was waiting for some direction from my attorney." The record contains no evidence
as to what this witness' testimony would have been other than Thomas' vague assertion the friend
could have testified "against one of the prosecution witnesses on my behalf" concerning Thomas'
"helpful nature," "various ministry projects," and "friendship in the seminary." There is not
sufficient evidence in the record regarding how this witness would have benefited Thomas' defense. 
Even if the witness had beneficial testimony, Thomas' trial counsel could have "reasonably
determined that the potential benefit of additional witnesses or evidence was outweighed by the risk
of unfavorable counter-testimony." Bone, 77 S.W.3d at 835. 
            Thomas also complains about the lack of expert witnesses. The affidavit indicates his trial
counsel had questioned two psychologists and determined their testimony would not aid the defense. 
This determination is a matter of strategy, and we must defer to the judgment of trial counsel. 
Because there are plausible professional reasons for not calling additional witnesses, Thomas has
not met his burden of showing that his trial counsel's performance was deficient.
            Third, Thomas contends his trial counsel's failure to use exculpatory polygraph evidence
rendered his assistance ineffective. Thomas' attorney at the federal proceedings arranged to have a
polygraph examination conducted. At trial, the State attempted to call the polygraph operator as a
witness. The State had intended to elicit testimony of admissions allegedly made by Thomas to the
polygraph operator during a pre-test interview. Thomas asserted attorney-client privilege to prevent
the operator from testifying. Thomas contends his attorney should have allowed the operator to
testify, called his previous lawyer to rebut the operator, and introduced portions of the polygraph
examination which were allegedly exculpatory. It is a reasonable conclusion counsel made the
strategic decision that allowing the operator to testify as to Thomas' admissions would be
undesirable.
            Texas courts have long refused to permit the results of polygraph examinations to be
admitted at trial, for either the defendant or the State. Robinson v. State, 550 S.W.2d 54, 59 (Tex.
Crim. App. 1977); Long v. State, 10 S.W.3d 389, 398 (Tex. App.—Texarkana 2000, pet. ref'd). The
United States Supreme Court has held the exclusion of polygraph evidence did not unconstitutionally
abridge the right of a defendant to present a defense because "[t]here is simply no consensus that
polygraph evidence is reliable." See United States v. Scheffer, 523 U.S. 303, 309 (1998). The policy
of the exclusion is based on the inherent unreliability of a polygraph examination and its tendency
to be unduly persuasive. Marcum v. State, 983 S.W.2d 762, 765 (Tex. App.—Houston [14th Dist.]
1998, no pet.). In rare circumstances, polygraph evidence erroneously admitted at trial has "opened
the door" to further inadmissible evidence regarding polygraph results. Long, 10 S.W.3d at 399
(citing Lucas v. State, 479 S.W.2d 314, 315 (Tex. Crim. App. 1972); Patteson v. State, 633 S.W.2d
549, 552 (Tex. App.—Houston [14th Dist.] 1982, no pet.)). 
            Even if the polygraph examination could have been admitted, it may not have been
exculpatory. Thomas provides three questions and answers which may prove exculpatory
concerning the charges of inducing or promoting a sexual performance by a child. According to
Thomas, the relevant excerpts of the polygraph examination are as follows:
i.Did you ask [J.S.] to make a video of himself masturbating? (NO)
ii.Were you in the room when [J.S.] was making a video of himself? (NO)
iii.Did you ask [J.S.] to make a video for your pleasure? (NO)

While these statements may prove exculpatory concerning the sexual performance charge, the
testimony of the polygraph operator as a whole may not be exculpatory concerning the other charges. 
We do not have any testimony as to admissions which Thomas may have made. According to the
State, Thomas had made some admissions concerning the sexual assaults of J.S. and T.M. 
            The decision not to allow the testimony of the polygraph operator appears to be a tactical
decision on the part of counsel. "[T]he defendant must prove, by a preponderance of the evidence,
that there is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d
at 836. Counsel may have determined that the risk of incriminating testimony by the operator
outweighed the potential exculpatory evidence. Because polygraph examinations are generally
inadmissible and the testimony of the operator may have incriminated Thomas in other ways,
Thomas has failed to prove there is no plausible professional reason for his counsel's conduct.
            Last, Thomas alleges he received ineffective assistance of counsel due to his trial counsel's
failure to effectively cross-examine the State's witnesses. We have reviewed the record and
concluded trial counsel did a thorough and adequate cross-examination of the State's witnesses. 
Thomas argues his counsel should have asked the questions Thomas had provided him concerning
the smoking by the boys at his house and x-rated movie. According to Thomas, the refusal to ask
these questions renders his trial counsel's performance deficient. This argument focuses solely on
matters of strategy. "Cross-examination is inherently risky, particularly in criminal cases where
pre-trial discovery is more limited than in civil cases. A decision not to cross-examine a witness is
often the result of wisdom acquired by experience in the combat of trial." Ryan v. State, 937 S.W.2d
93, 103 (Tex. App.—Beaumont 1996, pet. ref'd) (quoting Dannhaus v. State, 928 S.W.2d 81, 88
(Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). At times, it can be more effective to refrain
from cross-examining a damaging witness to minimize the impact of the testimony. Id. In addition
to failing to ask certain questions, Thomas complains his counsel was ineffective because he asked
certain questions which allegedly bolstered the State's case by "referring to the boys' masturbating
[as recorded] on the video, when they were not masturbating, merely exposing themselves." Counsel
was attempting to impeach J.S. concerning his claim of being forced to masturbate due to threats
made by Thomas. Counsel simply pointed out he was doing the "same thing" on the video without
any apparent threats. We cannot consider the wisdom of counsel's strategy, since ineffective
assistance of counsel claims cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 833. 
Further, such a statement does not bolster the State's case, because under the statute, both exhibition
of genitals and masturbation constitute sexual conduct. See Tex. Pen. Code Ann. § 43.25 (Vernon
Supp. 2004). We conclude that trial counsel's cross-examination did not fall below the objective
standards of professional norms.
            Further, claims of ineffective assistance of counsel must be evaluated based on the totality
of the circumstances. This Court must be able to conclude that trial counsel's actions amounted to
ineffective assistance of counsel based on the totality of the circumstances. The constitutional right
to counsel does not mean errorless counsel. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App.
1993); Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). In the totality of the
circumstances, trial counsel's performance was not deficient. 
            The second prong of the ineffective assistance of counsel test is whether Thomas' trial was
prejudiced by his trial counsel's alleged deficiency. Texas law requires Thomas to meet both prongs
of Strickland. A defendant does not meet his or her burden by merely showing that an error had
some conceivable effect on the outcome of the trial. Strickland, 466 U.S. at 693. The defendant
must show a "reasonable probability" that, but for the error, the result of the trial would have been
different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Thompson, 9 S.W.3d at 812. Because trial counsel's performance at trial was not
deficient, there is no need to examine the second requirement of Strickland. However, Thomas has
made no showing of how the deficient performance of trial counsel raises a reasonable probability
the result of the trial would have been different. We do not find trial counsel rendered ineffective
assistance to Thomas.
            For the reasons stated, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          February 26, 2004
Date Decided:             March 3, 2004

Do Not Publish