

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00791-CR

Izaya Thomas **FRANKLIN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR9942
Honorable Lisa Jarrett, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
            H. Todd McCray, Justice
            Velia J. Meza, Justice

Delivered and Filed: December 31, 2025

AFFIRMED

Izaya Franklin appeals his conviction on the sole count of family violence assault by choking as a repeat offender. Franklin argues he is entitled to a new trial because his counsel provided ineffective assistance by failing to argue self-defense during closing arguments. We

conclude he has not carried his burden to show his counsel's performance was objectively unreasonable and affirm the trial court's judgment as modified.[1]

## BACKGROUND

On August 29, 2022, Franklin went to Ann-Jillian Jackson's home for a lunch date. Franklin and Jackson had been intermittently dating for nearly two decades and shared a daughter together.

According to Jackson, Franklin arrived agitated and questioned her about where she had been. After hours of arguing, Jackson attempted to call her mother and the police because Franklin refused to leave. Franklin took her phone and tried to pull her necklace off. While Franklin looked for car keys in the kitchen, Jackson went to her bedroom to retrieve a second phone from a drawer (where her gun was also located), Franklin came up behind her and wrapped his arm around her neck, choking her until she couldn't breathe. Audio from the scuffle was captured on Ring camera, where Jackson can be heard gasping for air and yelling, "I can't breathe" while Franklin can be heard repeatedly yelling, "this is how much I love you."

Jackson testified Franklin then pushed her into the bathtub with such force, "I just flew from the sink to the bathtub," knocking the wind out of her. Franklin removed all her jewelry, retrieved a knife from the kitchen, held it up saying he would kill himself and both of them, then left the bathroom. Franklin stayed at the house for an extended period following the scuffle and was apologetic towards Jackson.

Their 16-year old daughter testified that she became concerned when Jackson was not answering her phone. She called Franklin who told her Jackson was with him. When the daughter

---

[1] As explained further below, we modify the written judgment to adhere to the oral pronouncement. *See Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998) (holding that oral pronouncement of the sentence controls over the written judgment).

arrived home, her mother was "in the corner" and her father was on the couch. She received a text from her mother and stayed at the door for about 20 minutes, trying to get her father to leave the house. Her father refused, saying he wasn't leaving, and they argued back and forth for about an hour and a half. She testified her mother "sounded normal but you can, like, tell where my mom is like -- voice is, like, scared," appeared "shook up." The daughter asked her father why her mother "couldn't swallow."

Police were called. The responding officer testified at trial that Jackson appeared "crying, a little hysterical, upset." Franklin was not present when the officer arrived but showed up after about 45 minutes. Franklin was arrested without further incident. An investigator testified that she observed Jackson sustained injuries consistent with choking. Another investigator testified that the Ring camera audio corroborated Jackson's statements that she was choked to the point of not being able to breathe.

The grand jury indicted Franklin with one count of robbery, one count of aggravated assault with a deadly weapon, one count of assault-family violence by choking as a repeat offender, and one count of assault-family violence as a repeat offender.[2] After the State waived two counts, the court found Franklin not guilty on the remaining aggravated assault count and guilty on the choking count. After finding the enhancement paragraphs true, the trial court sentenced Franklin to 25 years in prison.[3]

---

[2] *See* TEX. PENAL CODE §§ 29.02(a)(1), 22.02(a)(2), 22.01(b-3), and 22.01(b)(2)(A).

[3] We note that prior to pronouncing the sentence, the trial court asked the district attorney whether the choking count was a third-degree felony, to which the attorney responded, "It is, Judge."

The assault statute has several enhancement provisions which, in certain circumstances, may be combined together to further enhance the degree of the felony charged. Here, the referenced count alleged that Franklin both (1) had a prior conviction for family violence assault, and (2) choked a family member. While each allegation separately could be charged as a third-degree felony under section 22.01(b), when alleged together with an underlying assault allegation they constitute a second-degree felony. *See* TEX. PENAL CODE § 22.01(b-3). Furthermore, punishment may be further enhanced where, as here, additional prior offenses are used to satisfy a habitual enhancement. *See id.* § 12.42.

**DISCUSSION**

In one issue, Franklin complains that he received ineffective assistance of counsel because his trial counsel did not argue self-defense in closing arguments.

**1    Ineffective assistance of counsel under *Strickland***

To prove ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) that deficiency prejudiced him, meaning that there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to succeed on either prong is fatal to a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Under the first *Strickland* prong, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892-93. There is a strong presumption that trial counsel's conduct falls within a wide range of reasonableness and constitutes a "sound trial strategy." *Strickland*, 466 U.S. at 689. Unless the defendant provides a record that affirmatively demonstrates that counsel's performance was not a product of sound trial strategy, a reviewing court will presume that counsel's performance was constitutionally adequate. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008).

Under the second prong, a defendant must establish prejudice by showing that there is a reasonable probability, sufficient to undermine confidence in the outcome, that but-for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. When the defendant demonstrates that his counsel's errors were so serious that they deprived them of a fair trial, the second prong is satisfied. *Id*.

Franklin did not raise an ineffective assistance of counsel claim in the trial court. Although ineffective assistance of counsel may be raised for the first time on direct appeal, the record often will not be sufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008). Where the record is silent as to counsel's reasons, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

**2    Failure to argue self-defense was not "objectively unreasonable."**

We begin our analysis by noting that Franklin waived his right to a jury trial and all issues were tried to the bench, with the judge as sole factfinder. The State argues that this circumstance alone precludes Franklin's ineffective assistance of counsel argument. We reject the State's invitation to craft a brightline rule for ineffective assistance of counsel claims resulting from bench trials. Instead, we hold that a straightforward application of *Strickland* to this record shows counsel's performance was not objectively unreasonable.

To prove deficient performance based on trial counsel's failure to argue a defensive theory, an appellant must show that they were entitled to argue the theory to the factfinder. *Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023). The appellant must then show that counsel's choice to forgo the defensive theory was "objectively unreasonable." *Id*.

In this case, trial counsel's initial strategy appeared to focus on characterizing the choking as occurring during a consensual sexual encounter, pointing to a video showing Franklin claiming that Jackson likes to be choked out during sex. However, when Franklin ultimately testified, he categorically denied choking her. According to Franklin, he and Jackson drank tequila mixed with Sprite and began having sex in the living room, during which they argued about infidelity: Franklin

accused Jackson of sleeping with his brother and Jackson accused Franklin of sleeping with a friend. Franklin testified the argument culminated in Jackson threatening, "I'll do something to you," and went to her bedroom. Jackson reached for a drawer where he knew she kept a gun and they fought for control. Franklin stated that he disarmed Jackson by getting on top of her and "restrained" her. He denied ever hitting Jackson or stealing any items.

To receive a self-defense instruction, a defendant must admit to illegal conduct. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). While counsel initially introduced facts tending towards a self-defense theory, Franklin's subsequent categorical denial of choking or violence towards Jackson undercut counsel's efforts. Because of this, Franklin's counsel may have believed the sounder strategy was to not press self-defense—rather than risk losing credibility— where Franklin's testimony directly rebutted the State's theory. *See Dannhaus v. State*, 928 S.W.2d 81, 87 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (rejecting ineffective assistance of counsel claim where "it could have been more effective to focus the jury's attention on lack of mental state than to risk confusing the jury with instructions on other issues that were not well supported by the evidence").

Further, the record shows counsel waived closing to prevent the State from making any closing argument. After each side rested, the State reserved all of its time for rebuttal. Franklin's counsel then asked "what would they be rebutting if I said nothing?" After the court responded that the State would not be allowed to rebut if she waived closing, Franklin's counsel concluded, "I will not argue then." Under these circumstances, we cannot say counsel's decision to waive closing argument was objectively unreasonable.

Franklin has not carried his burden to show his counsel's performance was deficient for not expressly raising self-defense during closing arguments, where waiving closing was a

legitimate trial strategy. *See Dannhaus*, 928 S.W.2d at 87. Accordingly, we overrule Franklin's sole issue on appeal.

## CONCLUSION

Although not raised by either party, we note that the trial court's judgment contains nonreversible errors. We have the authority to modify and reform the trial court's judgment to make the judgment speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Here, the trial court's written judgment recites "N/A" with respect to all enhancement findings; however, the court orally found both enhancement paragraphs in the indictment true. Therefore, we modify the judgment to delete "N/A" under "Findings on 1st Enhancement Paragraph," "Findings on 2nd Enhancement Paragraph," and their associated pleas, and to instead reflect that the defendant pled "Not True" and that such paragraphs were found "True."

The judgment is affirmed as modified.

Velia J. Meza, Justice

DO NOT PUBLISH