**Opinion filed October 9, 2025**



# In The

# Eleventh Court of Appeals

_____

## Nos. 11-24-00069-CR & 11-24-00070-CR

_____

## RUSTY TAYLOR, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court**
**Brown County, Texas**
**Trial Court Cause Nos. 057921 & 057922**

## M E M O R A N D U M   O P I N I O N

Following a jury trial, Appellant, Rusty Taylor, was convicted of two Class A misdemeanor assaults. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (West Supp. 2024). The trial court assessed his punishment for each offense at confinement for one year in the Brown County Jail. *See id.* § 12.21 (West 2019). In a single issue

in each appeal, Appellant complains that he received ineffective assistance of counsel during the guilt-innocence phase of trial.[1]  We modify and affirm.

## I. *Factual Background*

On March 3, 2023, Appellant visited the "saloon" at Los Trece Texas (Los Trece), an "old west town" themed bar and event center in Brownwood; altercations ensued that day and Appellant assaulted two individuals.  In trial court cause no. 057921 (11-24-00069-CR), Appellant was charged by information with assault causing bodily injury to Robert Snyder—a retired "gunfighter" at Los Trece.  *See* PENAL § 22.01(a)(1).  In trial court cause no. 057922 (11-24-00070-CR), Appellant was charged by information with assault causing bodily injury to Darrin St. Ama— the former owner of Los Trece.  *See id.*

St. Ama testified that Appellant appeared agitated and that he observed Appellant arguing with his girlfriend in the saloon.  At some point, St. Ama approached Appellant, tapped him on the shoulder, and requested that Appellant go outside with him.  After he and Appellant left the saloon and walked outside, St. Ama testified that he kept his "hands in [his] pockets" during their interaction, and that the two men stopped near a picnic table to talk.  St. Ama sat down with one leg propped on the picnic table bench and Appellant stood behind him.  St. Ama later observed on video surveillance footage that Appellant "unbuttoned" and "was taking his shirt off" as they exited the saloon.

---

[1]Appellant's first court-appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw.  *See Anders v. California*, 386 U.S. 738 (1967).  Following the procedures set forth in *Anders, Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), and *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008), we independently reviewed the record and concluded that this appeal was not particularly amenable to disposition under *Anders*.  We granted appellate counsel's motion to withdraw, abated this appeal, and remanded this cause to the trial court with instructions to appoint other appellate counsel.  New appellate counsel was directed to file a brief on the merits and address any substantive issues that appellate counsel deemed to be arguable.  This appeal was reinstated after the trial court appointed new appellate counsel.

Appellant and St. Ama were conversing when Appellant told him to "watch his attitude." However, before St. Ama could respond, Appellant struck him in the jaw with a closed fist, knocking him to the ground. St. Ama testified that Appellant also struck several other individuals who were outside and attempting to restrain him, all of whom described Appellant as being "on a rampage." Eventually, a group of people were able to "corral" Appellant—without physically touching him—and "talk him [in]to leaving" Los Trece.

While in the parking lot, Appellant struck St. Ama a second time; St. Ama also saw Appellant strike Snyder on the side of the head with his fist. According to St. Ama, Snyder was "just walking" with the group when Appellant struck him. Thereafter, Appellant's girlfriend drove Appellant's pickup around the parking lot, but the pickup became stuck in the mud. St. Ama and Snyder, along with others, helped push the pickup out of the mud as Appellant taunted them from inside the pickup. St. Ama's testimony was corroborated by (1) Snyder, (2) Carrie Wells, (3) Kynzi Atchley, (4) D.J. Callaway, and (5) video surveillance footage, which was played for the jury.

Appellant testified that St. Ama approached him from behind in the saloon, and that St. Ama loudly knocked on the table with his hand where Appellant was sitting. Appellant stated that "there was no nonsense in [St. Ama's] tone" and that he "smelled alcohol on [St. Ama's] breath." Appellant testified that he felt "threatened and afraid for [his] life" when St. Ama knocked on the table, and he believed it was necessary to defend himself.

Appellant testified that he followed St. Ama outside the saloon to a picnic table, where St. Ama allegedly told Appellant to "get that s--t-eating grin off [his] face." In response, Appellant took off his shirt and told St. Ama that he needed to "choose [his] next words carefully." Appellant testified that his hands were in a defensive position, and he was waiting for St. Ama to hit him. Shortly thereafter,

3

and as soon as St. Ama "put his finger on [Appellant's] chest," Appellant punched St. Ama in the face. Appellant testified that he was then "blindsided" by another individual and "backed into a corner" by a group of others.

Appellant stated that the group taunted him as he and his girlfriend were leaving the parking lot in his pickup. Before that, Appellant believed that the group was "trying to circle [him]" while he was walking to the parking lot. After entering the parking lot, Appellant testified that he saw his girlfriend being attacked by another woman. Appellant stated that, while trying to defend his girlfriend, he was attacked by a male who had a Bowie knife and who threatened to kill him. According to Appellant, he struck Snyder in the face while they were in the parking lot.

Appellant's trial counsel mentioned self-defense in his opening statement, stating, "So, self-defense, we hear about the stand your ground rule. That is kind of where this comes back to. Even though there are no weapons involved, you do have the right to defend yourself if you feel threatened, and we're going to show that today." However, Appellant's trial counsel did not request an instruction on self-defense or defense of a third party during the charge conference, nor did he object to the omission of either instruction in the trial court's charge. Appellant's trial counsel also briefly alluded to self-defense in his closing argument to the jury.

## II. *Standard of Review and Applicable Law*

### A. *Ineffective Assistance of Counsel*

We review an ineffective-assistance-of-counsel complaint under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim of ineffective assistance of counsel, Appellant must satisfy both prongs of the *Strickland* standard: (1) performance and (2) prejudice. *Strickland*, 466 U.S. at 687; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). The failure

to succeed on either *Strickland* prong is fatal to a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

First, Appellant must show that trial counsel's representation was deficient in that it fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892–93. Second, Appellant must show that trial counsel's deficient performance prejudiced his defense—that is, counsel's errors were so serious as to deprive Appellant of a fair trial and, as a result, there is a reasonable probability that the outcome of his trial would have been different but for counsel's errors. *Id.* at 893; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 687–88). The "reasonable probability" component must rise to the level such that it is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)).

There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). To overcome this deferential presumption, a claim of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814; *Walker*, 406 S.W.3d at 593–94. In this regard, we will not inquire into counsel's trial strategy unless no possible basis exists to support such strategy or tactics. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). Thus, in our analysis, we must make every effort to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

B. *Ineffective Assistance of Counsel Challenges on Direct Appeal*

In most instances, direct appeal is an inadequate means by which to overcome the deferential presumption and show that trial counsel's representation was deficient and lacked tactical or strategic decision-making, because the record is typically undeveloped and will not show the extent of counsel's conduct and alleged failures. *Goodspeed*, 187 S.W.3d at 392; *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813–14. This is especially true when the basis for counsel's trial strategy and decisions do not appear in the record. *Goodspeed*, 187 S.W.3d at 392. In such circumstances, trial counsel should be afforded an opportunity to explain his or her actions before being denounced as ineffective. *Id.*; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

When the record contains no direct evidence of trial counsel's reasons or explanations for the challenged conduct, counsel's performance must be reviewed with great deference and without resort to hindsight, and we "will assume that counsel had a [valid] strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We will not speculate about counsel's motives or strategy in the face of a silent record. *Thompson*, 9 S.W.3d at 814. Therefore, if the record is silent as to any reason or explanation for counsel's actions, strategies, and alleged failures, as it is in this case, we "will not conclude [that] the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008); *Goodspeed*, 187 S.W.3d at 392; *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) (The defendant must show that there was no plausible, professional reason for counsel's specific acts or omissions.).

## III. *Analysis*

In his sole issue in each appeal, Appellant contends that his trial counsel rendered ineffective assistance because he failed to request an instruction on self-defense or defense of a third party. Specifically, Appellant contends that his trial counsel was ineffective because: (1) the record shows that trial counsel's entire defense strategy focused on self-defense; (2) the evidence shows that Appellant was entitled to a self-defense instruction; and (3) no reasonable trial strategy can justify counsel's failure to request this instruction. In response, the State asserts that Appellant has not established either *Strickland* prong. *See Strickland*, 466 U.S. at 687.

At the outset, we note that Appellant did not file a motion for new trial. As such, Appellant's trial counsel did not have the opportunity to explain or defend his actions or trial strategy or respond to what Appellant now contends constitutes deficient performance. Thus, for Appellant to demonstrate on direct appeal that his trial counsel rendered ineffective assistance, the record must affirmatively show that his counsel's representation "fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143; *see Strickland* 466 U.S. at 687. Furthermore, when, as here, the record does not reveal counsel's reasoning or strategies, we "presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that [trial counsel] 'made all significant decisions in the exercise of reasonable professional judgment.'" *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (quoting *Strickland*, 466 U.S. at 690); *see Morales*, 253 S.W.3d at 697; *Screws v. State*, 630 S.W.3d 158, 164–65 (Tex. App.—Eastland 2020, no pet.).

To prove deficient performance based on trial counsel's failure to request a defensive instruction, an appellant must first show that he was entitled to such an

instruction. *See Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023). "However, even if the appellant is entitled to a defensive instruction, the decision to forgo such an instruction may not be objectively unreasonable, as these decisions are frequently grounded in trial strategy." *Id.* (citing *Okonkwo v. State*, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013)). In this regard, a competent defense attorney may recognize that a particular defense may be available but could nevertheless decide that, given the circumstances of the case, asserting or relying on such a defense would not be appropriate or advisable. *Id.*

Section 9.31(a) of the Penal Code provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a). However, to receive a self-defense instruction submission, the defendant must admit to his illegal conduct. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)). A trial court errs if it refuses to submit a self-defense instruction if there is some evidence, viewed in the light most favorable to the defendant, to support its elements. *Id.* (citing *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017)).

Here, had counsel pursued a justification defense, the evidence must have showed that Appellant believed his use of force was immediately necessary under the circumstances to protect himself against St. Ama's and/or Snyder's use of unlawful force. *See* PENAL § 9.31(a). Although Appellant testified that he believed that he was in "imminent danger" because St. Ama knocked on the table with his hand, several witnesses testified that Appellant was the instigator and aggressor in both instances and that St. Ama's hands were in his pockets when Appellant struck him in the face. As such, the jury could have reasonably concluded that Appellant's conduct was in anticipation of an altercation with St. Ama based on his testimony,

Appellant's testimony that he took off his shirt to show St. Ama that he "meant business" before their altercation, or his testimony where he described how he waited for St. Ama to touch him before he punched him in the face. Additionally, Appellant seemingly punched Snyder in the face without provocation. Thus, this evidence, including Appellant's admissions, dilute his claim of self-defense. *See Dannhaus v. State*, 928 S.W.2d 81, 86 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

Appellant argues that no reasonable trial strategy justifies counsel's decisions and conduct because "the record it is clear counsel did not make any decision to forgo a justification defense" and counsel's entire defense strategy was based on self-defense. In support of his contention, Appellant specifically references the following statements made by his trial counsel during closing arguments:

> [DEFENSE COUNSEL]: I want to start -- you know, we talked a little bit about self-defense in my opening. One only has to fear imminent danger, and it's a reasonable person. It's not -- there is no clear cut what somebody might feel to be imminent. So, that is another question that you guys are going to have to kind of tussle with a little bit back there. But from the knock on the table.
>
> . . . .
>
> [DEFENSE COUNSEL]: So, once they get outside and they start the tussle, he felt like he was in a fight for his life because there was -- he hit the bar owner, and then he was immediately brought to the ground by another bigger gentleman, who then tackled him to the ground. So, then he had to fight.

However, despite Appellant's contention, we will not conclude that counsel's actions constituted deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. Moreover, and contrary to Appellant's assertions, the record shows

9

that counsel's closing argument did not focus solely on self-defense. Rather, counsel's closing argument indicates that he chose to focus on inconsistencies in the evidence adduced at trial and that the State had failed to prove its cases against Appellant beyond a reasonable doubt.

Appellant also argues that because the evidence was sufficient to support an instruction on self-defense, trial counsel's failure to request it constitutes ineffective assistance of counsel. However, even if Appellant was entitled to a self-defense instruction submission, and we do not hold that he was, trial counsel's failure to request it will not constitute ineffective assistance if counsel presents a defense at trial that is objectively reasonable. *See Dannhaus*, 928 S.W.2d at 86. Trial counsel could have concluded that requesting and receiving a self-defense instruction may have shifted the jury's view of Appellant's alleged defensive conduct—of defending himself from St. Ama's and Snyder's alleged use of unlawful force against him—to his otherwise aggressive conduct in committing the assaults. Thus, relying on this defense and the accompanying instruction may have harmed, rather than assisted, Appellant. *See Hart*, 667 S.W.3d at 782 ("[J]ust because a competent defense attorney recognizes that a particular defense *might* be available to a particular offense, he or she could also decide it would be inappropriate to propound such a defense in a given case." (quoting *Vasquez v. State*, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992) (per curiam))).

Based on the record before us, and because counsel was not afforded the opportunity to explain his trial strategies and reasoning, we cannot say that the decision to not request either justification instruction was so outrageous that no competent attorney would have forgone the same. *See Goodspeed*, 187 S.W.3d at 392; *Vasquez*, 830 S.W.2d at 950 n.3; *see also Martini v. State*, No. 05-17-00693-CR, 2018 WL 3598978, at *3 (Tex. App.—Dallas July 27, 2018, no pet.) (mem. op., not designated for publication) ("Where the evidence of guilt is overwhelming, and

the evidence to support an affirmative defense is weak, a strategy of focusing the jury on the strongest theory of innocence supported by the evidence is not objectively unreasonable."); *Roberts v. State*, No. 01-16-00059-CR, 2016 WL 6962308, at *5 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. ref'd) (mem. op., not designated for publication) ("Appellant's counsel could have reasonably determined that the evidence was weak enough that to include the instruction in the charge could risk credibility with the jury."). Further, because the undeveloped record does not affirmatively demonstrate that Appellant's trial counsel had no reasonable strategic basis for his decisions, we cannot conclude that his actions and decisions constitute ineffective assistance as Appellant suggests. *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812; *see also Lopez*, 343 S.W.3d at 142; *Richardson v. State*, No. 11-18-00185-CR, 2021 WL 747529, at *3–4 (Tex. App.—Eastland Feb. 26, 2021, no pet.) (mem. op., not designated for publication) (The appellant was convicted of assault-family violence, and trial counsel was not ineffective for not requesting a self-defense instruction.).

Accordingly, we overrule Appellant's sole issue in each appeal.

## IV. *Modification of Judgments*

Although not raised by either party, we note that the trial court's judgments contain nonreversible errors. We have the authority to modify and reform the trial court's judgments to make the judgments speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Here, the trial court's judgments recite that Appellant's cases were tried before the "Brown County Court at Law"; however, these cases were tried before the Brown County Court. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(12) (West Supp. 2024) (requiring that a "judgment shall reflect . . . [t]he county and court in which the case was tried"). Therefore, we modify both judgments to

delete "At Law" in the style of each case and recite that Appellant's cases were tried before the "County Court of Brown County."

## V. *This Court's Ruling*

As modified, we affirm the judgments of the trial court.

W. STACY TROTTER

JUSTICE

October 9, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.